**United States District Court**
                      **District of Massachusetts**
_____
                                  )
**LUIS M. FERREIRA,**             )
          **Plaintiff,**          )
          **v.**                  )
                                  )    **Civil Action No.**
**MICHAEL ASTRUE, in his official** )   **10-11983-NMG**
**capacity as COMMISSIONER OF THE** )
**SOCIAL SECURITY ADMINISTRATION,** )
          **Defendant.**          )
_____  )

                      **MEMORANDUM & ORDER**

**GORTON, J.**

     Plaintiff Luis M. Ferreira ("Ferreira") seeks judicial

review of the denial of his applications for disability benefits

by the defendant, Michael J. Astrue ("the Commissioner"), in his

official capacity as Commissioner of the Social Security

Administration ("SSA").  Before the Court are the plaintiff's

motion to reverse, and the defendant's motion to affirm, the

decision of the Commissioner.

## I.   Background

     Ferreira is a 52-year-old man who emigrated from Portugal to

the United States in 1979.  He finished the fourth grade in

Portugal, where he worked as a laborer, and now possesses limited

proficiency in English: he can read at a sixth grade level, spell

at a first grade level and can understand the language better

than he can speak it.  Before his injury that is the subject of

this appeal, he worked as a fiberglass laminator for a ship-

building company and then as a laborer in road construction.

In either late May or early June, 2003, Ferreira injured himself while attempting to lift a water pump from a muddy trench. Shortly thereafter, Ferreira visited orthopedist Dr. James Coleman due to back pain. In late July, 2003, an MRI of Ferreira's lumbar spine revealed that he had 1) a large right posterolateral disc extrusion which caused a significant mass effect on the emerging right L5 nerve root and 2) a new, small protrusion at T12-L1.

Dr. Coleman referred Ferreira to Dr. Matthew Philips, a neurosurgeon, who then performed surgery on Ferreira in August, 2003 in order to decompress Ferreira's nerve root. The surgery confirmed Ferreira had suffered from a right L5 radiculopathy secondary to right L4-5 herniated disc. Dr. Philips concluded that the surgery had adequately decompressed the nerve root and detected no other nerve compression.

In a post-surgery follow-up one month later, Ferreira reported to Dr. Philips that his lower extremity pain had resolved and that his back pain was intermittent but overall tolerable. Dr. Philips observed that his wound had healed well, that his motor examination was 5/5 on all extremities and that his gait was normal.[1] He recommended that Ferreira begin a

---

[1] See 20 C.F.R. Part 404, Subpart P, App. 1, 1.00E1 (explaining that muscle strength should be assessed using a scale of 0 to 5 with 5 being maximum strength).

course of physical therapy to strengthen his back and legs.

A follow-up MRI was conducted about a year later in September, 2004 ("the 2004 MRI").  The MRI showed enhanced scar tissue surrounding the L5 nerve root on the right, diffuse circumferential bulging at L4 and L5 and degenerative disc changes but no new or returned disc extrusion or herniation.

Ferreira had several follow-up visits with Dr. Philips between 2004 and 2006.  In February, 2004, Dr. Philips reported that Ferreira had a normal gait, a good range of motion in his back, no tenderness to palpation and his motor strength was 5/5 throughout.  In July, 2006, Dr. Philips reported that Ferreira had a decreased range of motion in his back, some tenderness to palpation, no straight-leg raising signs and his motor strength was 5/5 throughout.  In each visit, Ferreira continued to report intermittent numbness in his legs and persistent residual pain.  Dr. Philips discussed with Ferreira the ramifications of degenerative disc disease and the associated pain.  Dr. Philips continued to recommend physical therapy but no further surgery.

In late September, 2005, Dr. Scott Harris, an orthopedic specialist, conducted an Impartial Medical Examination as part of Ferreira's claim for worker's compensation benefits.  Dr. Harris noted that Ferreira had not engaged in any significant treatment over the past year and was taking only Advil to alleviate residual pain.  Ferreira told Dr. Harris that he continued to

experience numbness in his right leg and his back pain increased with activity.  Dr. Harris observed that Ferreira's heel-to-toe walk was normal, he had full flexion, no tenderness to palpation, hypoactive deep tendon reflexes at the patella and achilles jerks, some limitation with extension and lateral bending, excellent motor strength and no significant pain radiation from straight-leg raising.

Dr. Harris diagnosed Ferreira with a herniated intervertebral disc, lumbar radiculopathy and failed back syndrome.  He concluded that the injuries were caused by the June, 2003 work-related injury which had exacerbated previous back problems.  He stated that Ferreira had a permanent, partial disability but was capable of moderate duty work (lifting up to twenty pounds intermittently), limited walking and driving, and working eight hours a day if he could change positions periodically.  Finally, Dr. Harris concluded that Ferreira's treatment had reached an "end point", meaning that only conservative treatment and palliative medication (such as Advil) was necessary.

Between May, 2006 and February, 2010, Ferreira received continuing treatment from Dr. Eugene Russo, a neurosurgeon. During that period, Dr. Russo generally found that Ferreira's lumbar spine movements were severely restricted with flexion, extension and bilateral tilting due to muscle spasms; his

reflexes were decreased in both lower extremities; he
demonstrated weakness in his right foot dorsiflexors and plantar
flexion; and his straight-leg raising test on his right leg was
positive.  Dr. Russo concluded that Ferreira was permanently and
totally disabled and prescribed Percocet for the pain.  His
observations and conclusions remained materially unchanged
throughout his four-year treatment of Ferreira.

In November, 2006, Dr. Harris conducted a second impartial
examination of Ferreira.  He noted that Dr. Russo did not do
sensory, motor or reflex examinations when he examined Ferreira
in 2006.  His physical examination yielded essentially the same
results as his first examination, although he added that
Ferreira's sensory examination demonstrated a "glove stocking"
decreased sensation in the right leg which was non-dermatomal in
terms of its distribution.  He again concluded that Ferreira
suffered from a permanent but partial disability and was capable
of light-duty work.

Ferreira went to the emergency room in June, 2007, with
complaints of back pain.  The attending physician observed that
Ferreira had muscle spasms and his back was tender but was not in
acute distress.  His straight-leg raising test was negative
bilaterally.

Disability Determination Services referred Ferreira for a
consultative examination with neurologist Barbara Stelle, which

was conducted in September, 2007.  Dr. Stelle found that Plaintiff had paraspinal muscle spasms, decreased sensation in his right L5-S1 dermatome, a marked antalgic gait, his motor strength was 5/5 in some areas and 4/5 in others, his straight leg raising was to thirty degrees on the right and fifty degrees on the left (with complaints of back pain) and he had limited flexion, extension and lateral bending.

Finally, plaintiff's records were reviewed by a non-examining physician, Dr. John Jao.  Dr. Jao determined that Ferreira suffered from failed back syndrome with chronic pain and right sciatica, a moderate loss of range of motion, some decreased sensation in his right leg and a slight antalgic gait. He also, however, detected no motor weakness and noted that Ferreira could "ambulate independent without assistive device for ½ mile", could sit, stand or walk for about six hours in an eight-hour day and could occasionally lift twenty pounds.

Ferreira himself testified that he has taken Percocet to relieve his pain for six or seven years.  He has also stated, either in testimony or in his disability report, that he cannot drive, sit or stand for prolonged periods; cannot bend, squat or kneel or perform any housework; can walk only 15 minutes and lift the lightest objects; and sleeps restlessly due to pain.  He says that he does nothing on most days but stay home and watch television, although he is able to pay bills and prepare coffee

or light meals for himself.  He usually leaves the house only to go for a short walk or to visit a friend or the doctor.

## II.  **Procedural History**

In June, 2007, Ferreira applied for Social Security Disability Insurance ("SSDI") Benefits, alleging an inability to work since June, 2003 due to back problems.  The Commissioner denied that application in September, 2007.  The application was again denied by a Federal Reviewing Official in October, 2008.

In April, 2010, Administrative Law Judge Hugh S. Atkins (the "ALJ") heard testimony regarding Ferreira's alleged disability from Ferreira and medical and vocational experts.  Ferreira was represented at the hearing by counsel.  At the hearing, Dr. Edward Spindell, an orthopedic surgeon certified by the government to provide objective medical testimony at SSDI benefits hearings, testified that he had reviewed all the objective medical evidence in Ferreira's file.  Upon this review, Dr. Spindell concluded that Ferreira's physical impairments did not qualify as a listed disability under the controlling regulations, and he also agreed with Dr. Philips' opinion that Ferreira could conduct moderate-level work involving lifting of no more than twenty pounds.  The ALJ also heard testimony from Mike La Raia, a certified vocational expert who testified about the size of the possible job market in which Ferreira could work given his physical limitations.

In a June 9, 2010, decision affirming Ferreira's denial of SSDI benefits, the ALJ applied the "five-step sequential evaluation process."[2]  The ALJ concluded that Plaintiff was not disabled from June 4, 2003, through December 31, 2008, as defined by the Act. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 4, 2003 and December 31, 2008.  At step two, the ALJ found that Plaintiff's lumbar degenerative disc disease and status post discectomy were severe impairments.  At step three, the ALJ held that Plaintiff's impairments did not meet or medically equal an entry on the Listing of Impairments in 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, with special consideration given to Listing 1.04, "Disorders of the Spine".

At step four, the ALJ determined that Ferriera had the residual functional capacity ("RFC") to perform work involving lifting no more than ten pounds at a time and involving simple, routine tasks.  See 20 C.F.R. § 404.1520(e), (f), 416.920(e) and 404.1560 (RFC is assessed in terms of the claimant's ability to perform past relevant work he or she performed within the last 15 years,  either as the claimant actually performed it or as it is generally performed in the national economy).  Finally, at step five, the ALJ found that Ferreira's age, RFC, education and work

---

[2] The sequential evaluation process is a series of five "steps" that ALJs follow in order to determine if a claimant is disabled.  See 20 C.F.R. § 414.1520(a)(4).

experience indicated he was able to perform work as a machine operator, product inspector, assembly worker and packager, although he was not able to return to his past relevant work as a construction laborer.

The ALJ reasoned that, although the claimant's documented impairment could reasonably be expected to cause the alleged symptoms, Ferreira's statements concerning the intensity, persistence and limiting effects of those symptoms were not credible to the extent they were inconsistent with the objective medical evidence on record. He concluded that Dr. Russo's medical opinion was unpersuasive insofar as it was "conclusory and against the weight of the record as a whole." Instead, the ALJ found that the medical evidence was more consistent with the opinions of Dr. Spindell and the non-examining physicians, who concluded that Ferreira was capable of moderate work and light lifting. He noted that Ferreira could care for his personal needs, prepare light meals, pay bills and otherwise manage his finances, walk a quarter mile four to five times a week, watch television and socialize with friends and family. Thus, the ALJ concluded, Ferreira could engage in sedentary work and was, therefore, not totally disabled.

Because the Decision Review Board ("DRB") did not act on the Commissioner's decision within the allotted 90-day period, the ALJ's decision became final. On November 17, 2010, Ferreira

filed his complaint in this Court in which he appeals the denial of his application for SSDI benefits.

## III. <u>Analysis</u>

### A. **Legal Standard**

To obtain SSDI benefits under § 1602 of the Social Security Act, 42 U.S.C. § 1381(a) ("the Act"), an individual must demonstrate that he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). The impairment must be of such severity that the claimant is not only unable to continue his previous work, but also unable to engage in other kinds of substantial work that exist in the national economy fitting his age, education and work experience. <u>Deblois</u> v. <u>Sec'y of Health & Human Servs.</u>, 686 F.2d 76, 79 (1st Cir. 1982).

The Act gives federal district courts the power to affirm, modify or reverse the ALJ's decision or to remand the case for a rehearing. 42 U.S.C. § 405(g). Review under Section 405(g) is not <u>de novo</u>, however. <u>See</u> <u>Lizotte</u> v. <u>Sec'y of Health & Human Servs.</u>, 654 F.2d 127, 129 (1st Cir. 1981). The Act provides that the findings of the Commissioner are conclusive so long as 1) they are "supported by substantial evidence" and 2) the Commissioner has applied the correct legal standard. <u>See</u> <u>id.</u>;

Seavey v. Barhart, 276 F.3d 1, 9 (1st Cir. 2001).  If these two

criteria are satisfied, the Court must uphold the Commissioner's

decision even if the record could justify a different conclusion.

Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144

(1st Cir. 1987).  Substantial evidence means evidence "reasonably

sufficient" to support the ALJ's conclusion.  See Doyle v. Paul

Revere Life Ins. Co., 144 F.3d 31, 35 (1st Cir. 1999).

## B.    Application

Ferreira contends that the ALJ erred by determining that

1) his physical impairment did not meet or equal a qualified

listed impairment under the Act's regulations and 2) his

subjective complaints of pain were not credible.  Accordingly,

Ferreira requests that the Court reverse the Commissioner's

decision.

### 1.    Ferreira's Non-Qualifying Back Injury

Ferreira first contends that the ALJ erred in concluding his

impairment did not qualify as a "listed impairment" under Listing

Section 1.04A ("Section 1.04A").  A finding that a claimant

suffers from a listed impairment is critical because it results

in an automatic finding of disability.  See 20 C.F.R. §

416.920(d).  The burden is on the claimant, however, to produce

evidence that he satisfies the criteria for a particular "listed"

condition.  See Mills v. Apfel, 244 F.3d 1, 6 (1st Cir. 2001).

For injuries to the spine under Section 1.04A, a claimant

must demonstrate

    1)    a disorder of the spine (such as herniated nucleus pulposus or degenerative disc disease) which compromises the nerve root or spinal cord, with

    2)    evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of spinal motion, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine).

See 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04A. To prove that his impairment matches a listing, a claimant must meet all of the specified medical criteria. "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Here, the ALJ found that Ferreira did not meet the second part of the listing, i.e., that he had ongoing nerve root compression characterized by motor, sensory or reflex loss. To support that conclusion, the ALJ relied on: 1) the post-operation 2004 MRI, 2) Dr. Harris's reports and 3) the testimony of Dr. Spindell.

Ferreira contends that the ALJ misapplied that evidence, ignored contradictory evidence and improperly disregarded the conclusions of Dr. Russo, his treating physician. He notes that Dr. Harris, among other doctors, diagnosed him with conditions, such as lumbar radiculopathy, herniated intervertebral disc and failed back syndrome, which are often caused by nerve compression

and that the 2004 MRI revealed the formation of enhanced scar tissue near the nerve root.

Although Dr. Harris's diagnosis and the 2004 MRI may present evidence of a spine disorder and nerve root compression, the pertinent issue is whether the ALJ erred in determining that any nerve root compression was not characterized by motor, sensory or reflex loss. It is indeed a close question, especially with respect to any sensory or reflex loss, but the Court concludes that the ALJ's decision is reasonably supported by objective medical evidence. The reports of Drs. Phillips and Harris show Ferreira enjoyed significant improvement in his strength, flexion and pain levels after the surgery in 2003. Throughout the relevant period, examining physicians (such as Drs. Philips, Harris, Stelle and Jao) agreed that Ferreira retained excellent motor strength in all extremities. Straight-leg raising tests conducted by Drs. Philips and Harris in July and November of 2006, respectively, were negative. While Ferreira complained to Dr. Harris of some back pain in the supine position, it was accompanied by no sciatic radiation in either leg.

Dr. Russo (beginning in May, 2006) reached contrary conclusions, consistently finding positive straight-leg raise tests but only sometimes finding weakness in the right foot dorsiflexors and plantar flexion. That weakness was twice characterized as "mild" and once characterized as "persistent".

The ALJ discredited Dr. Russo's conclusions later in his opinion.  He explained that although controlling weight is typically given to a treating physician's opinion regarding the claimant's abilities, he would accord "diminished evidentiary weight" to Dr. Russo's conclusions insofar as they were 1) "conclusory" and "against the weight of the evidence as a whole" and 2) not supported by "medically acceptable signs, symptoms, and/or laboratory findings" or other objective medical findings.

The Court concludes that the ALJ was not obligated to accept as controlling either Dr. Russo's conclusion of disability or his medical conclusions.  A treating physician's medical opinion is only entitled to controlling weight when it is 1) medically well-supported and 2) not inconsistent with other substantial evidence in the record.  20 C.F.R. § 404.1527(d)(2).  Additionally, a treating physician's opinion that a claimant is "disabled" is not a medical opinion entitled to deference, but a conclusion on an issue reserved for the Commissioner.  Id. § 404.1527(e)(3).

As discussed, evaluating doctors consistently concluded that Ferreira's straight-leg raise tests were negative, his motor strength was excellent, his gait was stable and he had either no or only moderate loss of range of motion.  Although Dr. Russo intermittently reported numbness and some motor weakness, he did not reliably conduct motor, sensory or reflex examinations to

support his conclusions.  Given the inconsistencies between the conclusions of Dr. Russo the other evaluating doctors, the ALJ acted reasonably in declining to accord Dr. Russo's opinion controlling weight.  Resolution of conflicts in the record is the primary responsibility of the Commissioner and the Court must affirm that resolution where, as here, it is supported by substantial evidence,  "even if the record arguably could justify a different conclusion".  See Rodriguez-Pagan, 819 F.2d at 3.

### 2.    The ALJ's Determination of Ferreira's Credibility

Ferreira next contends that the ALJ erred by discounting his subjective claims of pain when assessing his RFC.  A fact-finder's assessment of a party's credibility, however, is given considerable deference and, accordingly, a reviewing court will rarely disturb it.  Anderson v. Astrue, 682 F. Supp. 2d 89, 97 (D. Mass. 2010).

Often, an ALJ must reconcile objective medical evidence with subjective claims of pain that appear exaggerated or otherwise insincere.  In such circumstances, the ALJ must determine the extent to which the alleged functional limitations and restrictions due to pain can reasonably be accepted as consistent with objective medical evidence and other relevant information to decide how a claimant's symptoms affect his ability to work.  20 C.F.R. § 404.1529(a).  Other relevant information includes: 1) the nature, location, onset, duration, frequency, radiation, and

intensity of any pain, 2) precipitating and aggravating factors,
3) type, dosage, effectiveness and adverse side-effects of any
pain medication, 4) treatment, other than medication, for relief
of pain, 5) functional restrictions and 6) the claimant's daily
activities.  See Avery v. Sec'y of Health & Human Servs., 797
F.2d 19, 21 (1st Cir.1986).  Although the ALJ must make some
"specific findings as to the relevant evidence he considered in
determining to disbelieve" a claimant, the ALJ need not march
through every single step of his reasoning for finding the
claimant non-credible.  Anderson, 682 F. Supp. at 97 (internal
citations omitted).

Here, the ALJ found Ferreira's statements concerning the
intensity, persistence and limiting effect of the symptoms to be
implausible to the extent alleged.  The ALJ first considered
testimony and reports from Ferreira himself that he was able to
care for his personal needs, prepare light meals, pay his bills
and manage his finances, walk one-quarter mile four to five times
per week, watch television and socialize with friends.  He then
determined that, while Ferreira did suffer from limitations, a
finding of total disability was not supported by the objective
medical evidence.

The ALJ's assessment is supported by the opinions of Dr.
Spindell, the reviewing expert, and Mike Le Raia, the vocational
expert, who concluded that Ferreira is capable of sedentary,

unskilled work.  Dr. Spindell's conclusions were based on reports

from Drs. Philips and Harris, who agreed that Ferreira's

functioning improved significantly post-surgery, including

improvements in pain levels and numbness, range of motion,

strength and gait.  Between 2005 and 2008, Drs. Harris and Jao

both concluded that Ferreira, despite his serious disability, was

capable of moderate duty work (lifting up to twenty pounds) and

working eight hours a day if able to change positions

periodically.

In the face of that objective evidence, the ALJ determined

Ferreira was not fully credible and accorded his subjective

symptoms limited weight.  The Court concludes that the ALJ's

conclusion was reasonable and that his assessment of Ferreira's

RFC is supported by the record as a whole.  Accordingly, the

Court will affirm the Commissioner's decision.

### ORDER

In accordance with the foregoing,

1)   plaintiff's Motion for Order Reversing the
     Commissioner's Decision (Docket # 10) is **DENIED;** and

2)   defendant's Motion for Order Affirming the
     Commissioner's Decision (Docket # 13) is **ALLOWED.**


**So ordered.**

                                    /s/ Nathaniel M. Gorton
                                   Nathaniel M. Gorton
                                   United States District Judge
Dated March 29, 2012